```
                                              SEND

                                              ENTER
```

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

```
ROBERT L. STEVENSON,            )    No. EDCV 06-0537-RC
                                )
         Plaintiff,             )
                                )    OPINION AND ORDER
    v.                          )
                                )
MICHAEL J. ASTRUE,¹             )
Commissioner of Social Security,)
                                )
         Defendant.             )
_____)
```

Plaintiff Robert L. Stephenson filed a complaint on June 1, 2006, seeking review of the Commissioner's decision denying his applications for disability benefits. The Commissioner answered the complaint on October 26, 2006, and the parties filed a joint stipulation on December 26, 2006.

**BACKGROUND**

**I**

On August 7, 2002 (protective filing date), plaintiff applied for

---

[1] Pursuant to Fed. R. Civ. P. 25(d)(1), Michael J. Astrue is substituted as the defendant in this action.

disability benefits under Title II of the Social Security Act ("the Act"), 42 U.S.C. § 423, claiming an inability to work since July 27, 2002, due to a bipolar disorder, schizophrenia, a stress disorder, short-term memory loss, and blindness in his right eye. Certified Administrative Record ("A.R.") 45-48, 62. The application was denied initially on December 24, 2002, and was denied again on April 10, 2003, following reconsideration. A.R. 24-32. Meanwhile, on February 20, 2003 (protective filing date), plaintiff filed an application for disability benefits under the Supplemental Security Income ("SSI") program of Title XVI of the Act, 42 U.S.C. § 1382(a), also claiming an onset date of July 27, 2002. A.R. 11.[2] The plaintiff subsequently requested an administrative hearing, which was held before Administrative Law Judge F. Keith Varni ("the ALJ") on November 8, 2005. A.R. 34, 263-96. On January 11, 2006, the ALJ issued a decision finding plaintiff is not disabled and denying both applications. A.R. 8-20. The plaintiff appealed this decision to the Appeals Council, which denied review on May 1, 2006. A.R. 4-7.

**II**

The plaintiff, who was born on April 14, 1969, is currently 38 years old. A.R. 46, 265. He has a high school degree and has previously worked as a refurbisher, maintenance person, drywall apprentice, knot bucker, auto repossessor, feeder, and delivery driver. A.R. 63, 68, 71-78, 168.

//

---

[2] The administrative record does not contain the SSI application; however, the ALJ's opinion sets forth the relevant facts regarding it. A.R. 11-20.

On August 27, 2002, John Arnold, Ph.D., a licensed clinical psychologist, examined plaintiff at the Community Health Association of Spokane ("CHAS") and diagnosed him with an unspecified bipolar disorder and cannabis dependence.[3]  A.R. 203.  The plaintiff received treatment at CHAS through February 11, 2003.  A.R. 188-202.  On September 6, 2002, Jennifer A. Troiano, M.D., examined plaintiff, diagnosed him with a bipolar affective disorder and prescribed Paxil[4] and Zyprexa[5] for him.  A.R. 201-02.  On October 11, 2002, Dr. Arnold determined plaintiff's Global Assessment of Functioning ("GAF") to be 50,[6] and opined plaintiff's prognosis was poor, noting plaintiff has a personal and family history of bipolar disorder and admitted smoking cannabis daily.  A.R. 196-98.  Dr. Arnold also noted that, during treatment, plaintiff exhibited manic behavior, made statements consistent with magical thinking and hyper-religiosity, had an uneven

---

[3] Although plaintiff has both mental and physical complaints, he challenges only the ALJ's assessment of his mental condition.

[4] "Paxil is prescribed for a serious, continuing depression that interferes with [the] ability to function.  Symptoms of this type of depression often include changes in appetite and sleep patterns, a persistent low mood, loss of interest in people and activities, decreased sex drive, feelings of guilt or worthlessness, suicidal thoughts, difficulty concentrating, and slowed thinking."  The PDR Family Guide to Prescription Drugs, 492 (8th ed. 2000).

[5] "Zyprexa helps manage symptoms of schizophrenia and other psychotic disorders."  Id. at 773.

[6] A GAF of 50 means that the plaintiff exhibits "[s]erious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) or any serious impairment in social, occupational, or school functioning (e.g. no friends, unable to keep a job)."  American Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders, 34 (4th ed. (Text Revision) 2000).

3

pace and labile affect, and exhibited symptoms of a delusional process; nevertheless, he found plaintiff exhibited reasonable concentration and short and long-term memory function.  A.R. 197-98.

On October 21, 2002, Dr. Arnold opined plaintiff has:  "severe" limitations in his ability to exercise judgment and make decisions as well as in his ability to relate appropriately to co-workers and supervisors;[7] "marked" limitations in his ability to respond appropriately to and tolerate the pressures and expectations of a normal work setting;[8] "moderate" limitations in his ability to understand, remember and follow complex (more than two step) instructions, learn new tasks, interact appropriately in public contacts, and control physical or motor movements and maintain appropriate behavior;[9] and "mild" limitations in his ability to understand, remember and follow simple (one or two step) instructions, perform routine tasks, and care for himself, including personal hygiene and appearance.[10]  A.R. 190-93.  Dr. Arnold also opined plaintiff has:  "moderate" depressed moods, social withdrawal, hyperactivity, and physical complaints; "mild" verbal expressions of anxiety or fear, expressions of anger, motor agitation, paranoid

---

[7] In this context, a "severe" rating indicates an "[i]nability to perform one or more basic work-related activities."  A.R. 190.

[8] A "marked" rating indicates "[v]ery significant interference with basic work-related activities."  Id.

[9] A "moderate" rating indicates a "[s]ignificant interference with basic work-related activities."  Id.

[10] A "mild" rating indicates "[n]o significant interference with basic work-related activities."  Id.

4

1 behavior, and hyperactivity; and no suicidal trends, motor
2 retardation, or hallucinations.  A.R. 191.  Further, Dr. Arnold opined
3 plaintiff's overall illness is of "marked" severity and plaintiff is
4 in the "seriously disturbed" category of the mental health priority
5 populations.[11]  A.R. 191, 193.  Moreover, Dr. Arnold found plaintiff's
6 limitations were not most likely the result of alcohol or drug abuse
7 and would not likely dissipate within sixty days of sobriety, and
8 plaintiff's "bipolar disorder is probably clinically significant
9 without substance use[,]" although his bipolar symptoms "are probably
10 exacerbated to some degree" by drug abuse.  A.R. 192.  Finally, Dr.
11 Arnold determined plaintiff has an IQ of between 70 and 84.  A.R. 190.

13   On December 18, 2002, Michael Brown, Ph.D., a nonexamining
14 clinical psychologist, diagnosed plaintiff with a bipolar disorder and
15 cannabis dependence, and opined plaintiff has "mild" restrictions in
16 activities of daily living, "moderate" difficulties in maintaining

---

[11] Dr. Arnold's opinion utilizes terminology from Washington's Community Mental Health Services Act, see A.R. 193, which defined a "[s]eriously disturbed person" as someone who:

> (a) Is gravely disabled or presents a likelihood of serious harm to himself or herself or others, or to the property of others, as a result of a mental disorder . . . ;
> (b) Has been on conditional release status, or under a less restrictive alternative order, at some time during the preceding two years from an evaluation and treatment facility or a state mental health hospital;
> (c) Has a mental disorder which causes major impairment in several areas of daily living; [or]
> (d) Exhibits suicidal preoccupation or attempts;
> . . . .

Revised Code of Wash. 71.24.025(17) (2002).

 1 | social functioning, "moderate" difficulties in maintaining
 2 | concentration, persistence or pace, and has had "no[]" episodes of
 3 | decompensation.  A.R. 180-87.  Dr. Brown also opined plaintiff is
 4 | "moderately" limited in his ability to:  understand, remember and
 5 | carry out detailed instructions; maintain attention and concentration
 6 | for extended periods; complete a normal workday and workweek without
 7 | interruptions from psychologically-based symptoms and to perform at a
 8 | consistent pace without an unreasonable number and length of rest
 9 | periods; interact appropriately with the general public; accept
10 | instructions and respond appropriately to criticism from supervisors;
11 | get along with coworkers or peers without distracting them or
12 | exhibiting behavioral extremes; respond appropriately to changes in
13 | the work setting; and set realistic goals or make plans independently
14 | of others; however, plaintiff is otherwise not significantly limited.
15 | A.R. 212-14.  Furthermore, Dr. Brown opined plaintiff has anger
16 | issues, needs to work away from close contact with others, and needs a
17 | firm but fair supervisor.  A.R. 214.  Finally, Dr. Brown determined
18 | plaintiff's bipolar disorder to be credible and supported by clinical
19 | findings, and found plaintiff's symptoms would episodically slow his
20 | work pace; however, Dr. Brown opined that plaintiff has worked
21 | successfully in the past despite his untreated bipolar disorder and
22 | cannabis dependence.  Id.  On April 7, 2003, Edward T. Beaty, Ph.D.,
23 | another nonexamining clinical psychologist, reaffirmed Dr. Brown's
24 | opinions except for the finding that plaintiff had no episodes of
25 | decompensation; rather, Dr. Beaty found plaintiff had one or two
26 | episodes of decompensation.  A.R. 212, 223-30.  Finally, Dr. Beaty
27 | opined that the severity of plaintiff's symptoms "waxes and wanes
28 | according to his compliance with medications."  A.R. 230.

**DISCUSSION**

**III**

The Court, pursuant to 42 U.S.C. § 405(g), has the authority to review the Commissioner's decision denying plaintiff disability benefits to determine if his findings are supported by substantial evidence and whether the Commissioner used the proper legal standards in reaching his decision. Parra v. Astrue, 481 F.3d 742, 746 (9th Cir. 2007); Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006).

The claimant is "disabled" for the purpose of receiving benefits under the Act if he is unable to engage in any substantial gainful activity due to an impairment which has lasted, or is expected to last, for a continuous period of at least twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505(a), 416.905(a). "The claimant bears the burden of establishing a prima facie case of disability." Roberts v. Shalala, 66 F.3d 179, 182 (9th Cir. 1995), cert. denied, 517 U.S. 1122 (1996); Smolen v. Chater, 80 F.3d 1273, 1289 (9th Cir. 1996).

The Commissioner has promulgated regulations establishing a five-step sequential evaluation process for the ALJ to follow in a disability case. 20 C.F.R. §§ 404.1520, 416.920. In the **First Step**, the ALJ must determine whether the claimant is currently engaged in substantial gainful activity. 20 C.F.R. §§ 404.1520(b), 416.920(b). If not, in the **Second Step**, the ALJ must determine whether the claimant has a severe impairment or combination of impairments significantly limiting him from performing basic work activities. 20

C.F.R. §§ 404.1520(c), 416.920(c).  If so, in the **Third Step**, the ALJ must determine whether the claimant has an impairment or combination of impairments that meets or equals the requirements of the Listing of Impairments ("Listing"), 20 C.F.R. § 404, Subpart P, App. 1.  20 C.F.R. §§ 404.1520(d), 416.920(d).  If not, in the **Fourth Step**, the ALJ must determine whether the claimant has sufficient residual functional capacity despite the impairment or various limitations to perform his past work.  20 C.F.R. §§ 404.1520(f), 416.920(f).  If not, in **Step Five**, the burden shifts to the Commissioner to show the claimant can perform other work that exists in significant numbers in the national economy.  20 C.F.R. §§ 404.1520(g), 416.920(g).

Where there is evidence of a mental impairment that may prevent a claimant from working, the Commissioner has supplemented the five-step sequential evaluation process with additional regulations addressing mental impairments.  <u>Maier v. Comm'r of the Soc. Sec. Admin.</u>, 154 F.3d 913, 914-15 (9th Cir. 1998) (per curiam).  First, the ALJ must determine the presence or absence of certain medical findings relevant to the ability to work.  20 C.F.R. §§ 404.1520a(b)(1), 416.920a(b)(1).  Second, when the claimant establishes these medical findings, the ALJ must rate the degree of functional loss resulting from the impairment by considering four areas of function: (a) activities of daily living; (b) social functioning; (c) concentration, persistence, or pace; and (d) episodes of decompensation.  20 C.F.R. §§ 404.1520a(c)(2-4), 416.920a(c)(2-4).  Third, after rating the degree of loss, the ALJ must determine whether the claimant has a severe mental impairment.  20 C.F.R. §§ 404.1520a(d), 416.920a(d).  Fourth, when a mental impairment is found to be severe, the ALJ must determine if it meets

or equals a Listing. 20 C.F.R. §§ 404.1520a(d)(2), 416.920a(d)(2). Finally, if a Listing is not met, the ALJ must then perform a residual functional capacity assessment, and the ALJ's decision "must incorporate the pertinent findings and conclusions" regarding plaintiff's mental impairment, including "a specific finding as to the degree of limitation in each of the functional areas described in [§§ 404.1520a(c)(3), 416.920a(c)(3)]." 20 C.F.R. §§ 404.1520a(d)(3), (e)(2), 416.920a(d)(3), (e)(2).

Applying the five-step sequential evaluation process, the ALJ found plaintiff has not engaged in substantial gainful activity since July 27, 2002. (Step One). The ALJ then found plaintiff has a substance addiction disorder, affective disorder and personality disorder, which are severe impairments (Step Two); however, he does not have an impairment or combination of impairments that meets or equals a Listing. (Step Three). The ALJ next determined plaintiff is unable to perform his past relevant work. (Step Four). Finally, the ALJ concluded plaintiff can perform a significant number of jobs in the national economy; therefore, he is not disabled. (Step Five).

**IV**

At Step Five, the burden shifts to the Commissioner to show the claimant can perform other jobs that exist in the national economy. Widmark v. Barnhart, 454 F.3d 1063, 1069 (9th Cir. 2006); Pinto v. Massanari, 249 F.3d 840, 844 (9th Cir. 2001). To meet this burden, the Commissioner "must 'identify specific jobs existing in substantial numbers in the national economy that claimant can perform despite [his] identified limitations.'" Meanel v. Apfel, 172 F.3d 1111, 1114

(9th Cir. 1999) (quoting Johnson v. Shalala, 60 F.3d 1428, 1432 (9th Cir. 1995)). There are two ways for the ALJ to meet this burden: "(1) by the testimony of a vocational expert, or (2) by reference to the Medical Vocational Guidelines ["Grids"] at 20 C.F.R. pt. 404, subpt. P, app. 2."[12] Tackett v. Apfel, 180 F.3d 1094, 1099 (9th Cir. 1999); Widmark, 454 F.3d at 1069. However, the ALJ cannot rely on the Grids when, as here, the claimant suffers from mental limitations; rather, he must obtain the testimony of a vocational expert. Widmark, 454 F.3d at 1069-70; Thomas v. Barnhart, 278 F.3d 947, 960 (9th Cir. 2002). Moreover, hypothetical questions posed to a vocational expert must consider all of the claimant's limitations, Thomas, 278 F.3d at 956; Lewis v. Apfel, 236 F.3d 503, 517 (9th Cir. 2001), and "[t]he ALJ's depiction of the claimant's disability must be accurate, detailed, and supported by the medical record." Tackett v. Apfel, 180 F.3d 1094, 1101 (9th Cir. 1999). "If a vocational expert's hypothetical does not reflect all the claimant's limitations, then the 'expert's testimony has no evidentiary value to support a finding that the claimant can perform jobs in the national economy.'" Matthews v. Shalala, 10 F.3d 678, 681 (9th Cir. 1993) (quoting Delorme v. Sullivan, 924 F.2d 841, 850 (9th Cir. 1991)); Lewis, 236 F.3d at 517.

---

[12] The Grids are guidelines setting forth "the types and number of jobs that exist in the national economy for different kinds of claimants. Each rule defines a vocational profile and determines whether sufficient work exists in the national economy. These rules represent the [Commissioner's] determination, arrived at by taking administrative notice of relevant information, that a given number of unskilled jobs exist in the national economy that can be performed by persons with each level of residual functional capacity." Chavez v. Dep't of Health and Human Servs., 103 F.3d 849, 851 (9th Cir. 1996) (citations omitted).

1    A claimant's residual functional capacity ("RFC") is what he can
2 still do despite his physical, mental, nonexertional, and other
3 limitations.  Mayes v. Massanari, 276 F.3d 453, 460 (9th Cir. 2001);
4 Cooper v. Sullivan, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989).  Here,
5 the ALJ found plaintiff has the RFC to perform "work activities at all
6 levels of exertion . . . limited to simple, routine, repetitive, non-
7 public tasks."  A.R. 14.  Incorporating this finding, the ALJ asked
8 vocational expert Alan L. Ey the following hypothetical question:
9
10    Please consider a younger person, high school equivalency,
11    the work noted in 4E, a physically unlimited RFC, and mental
12    limits limiting the work to that involv[ing] simple,
13    routine, repetitive, non-public tasks.  With this assessment
14    can the claimant return to any past relevant work [or any
15    other work in the regional or national economies]?
16
17 A.R. 233-34.  Mr. Ey answered that an individual with this vocational
18 profile could not perform any of plaintiff's past relevant work;
19 however, he could work as a commercial cleaner, Dictionary of
20 Occupational Titles ("DOT")[13] no. 381.687-014; a horticultural worker,
21 DOT no. 405.687-014; and a hand packager, DOT no. 920.587-018.  A.R.
22 234.  Based on the vocational expert's testimony, the ALJ found
23 plaintiff retains the RFC to perform a significant number of jobs in
24
---
25    [13]  The DOT is the Commissioner's primary source of reliable
26 vocational information.  Johnson v. Shalala, 60 F.3d 1428, 1434
   n.6 (9th Cir. 1995); Terry v. Sullivan, 903 F.2d 1273, 1276 (9th
27 Cir. 1990); see also Pinto, 249 F.3d at 845-46 ("[T]he best
   source for how a job is generally performed is usually the
28 Dictionary of Occupational Titles.").

the national economy and, thus, is not disabled.  A.R. 19-20.
However, plaintiff contends the ALJ's findings are not supported by
substantial evidence because:  (a) the ALJ failed to properly consider
the opinions of plaintiff's treating psychologist, Dr. Arnold, and (b)
the ALJ did not pose a complete hypothetical question to the
vocational expert.  The plaintiff is correct on both grounds.

The medical opinions of treating physicians or psychologists are entitled to special weight because the treating doctor "is employed to cure and has a greater opportunity to know and observe the patient as an individual."  Sprague v. Bowen, 812 F.2d 1226, 1230 (9th Cir. 1987); Edlund v. Massanari, 253 F.3d 1152, 1157 (9th Cir. 2001); see also 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2) (generally providing more weight is given to treating sources "since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s). . . .").  Therefore, the ALJ must provide clear and convincing reasons for rejecting the uncontroverted opinions of a treating psychologist, Bayliss v. Barnhart, 427 F.3d 1211, 1216 (9th Cir. 2005); Connett v. Barnhart, 340 F.3d 871, 874 (9th Cir. 2003), and "[e]ven if [a] treating doctor's opinion is contradicted by another doctor, the ALJ may not reject this opinion without providing 'specific and legitimate reasons' supported by substantial evidence in the record."  Reddick v. Chater, 157 F.3d 715, 725 (9th Cir. 1998); Bayliss, 427 F.3d at 1216.

In determining that plaintiff has the RFC to perform simple, routine, repetitive, non-public tasks, the ALJ did not include all of the limitations found by Dr. Arnold, although he stated he did.  See

12

1  A.R. 18.  Most significantly, Dr. Arnold found plaintiff is unable to
2  relate appropriately to co-workers and supervisors, A.R. 190, 192, and
3  the ALJ did not include this limitation in determining plaintiff's
4  RFC.  A.R. 14.  Merely limiting plaintiff to "non-public tasks," as
5  the ALJ did, is insufficient since a task that has little or no
6  contact with the public may still require interaction with co-workers
7  and supervisors.  Thus, the ALJ implicitly rejected one of Dr.
8  Arnold's opinions without providing any reason at all for rejecting
9  it, and this failure is legal error.  Smolen, 80 F.3d at 1286; Baxter
10 v. Sullivan, 923 F.2d 1391, 1396 (9th Cir. 1991).  Moreover, the ALJ
11 also failed to incorporate the limitation that plaintiff is unable to
12 relate appropriately to co-workers and supervisors into his
13 hypothetical question to the vocational expert; thus, the vocational
14 expert's response to the incomplete hypothetical posed to him has no
15 evidentiary value and the ALJ's Step Five determination is not
16 supported by substantial evidence.  Edlund, 253 F.3d at 1160; Lewis,
17 236 F.3d at 517-18.

**V**

20    When the Commissioner's decision is not supported by substantial
21 evidence, the Court has authority to affirm, modify, or reverse the
22 Commissioner's decision "with or without remanding the cause for
23 rehearing."  42 U.S.C. § 405(g); McCartey v. Massanari, 298 F.3d 1072,
24 1076 (9th Cir. 2002).  "Remand for further administrative proceedings
25 is appropriate if enhancement of the record would be useful[,]"
26 Benecke v. Barnhart, 379 F.3d 587, 593 (9th Cir. 2004), as it would be
27 here.  See Bunnell v. Barnhart, 336 F.3d 1112, 1115-16 (9th Cir. 2003)
28 (affirming district court's remand based, in part, on ALJ's failure to

13

provide adequate reasons for rejecting treating physician's opinions, where additional issues need to be resolved); Harman v. Apfel, 211 F.3d 1172, 1180 (9th Cir. 2000) ("In cases where the testimony of the vocational expert has failed to address a claimant's limitations as established . . . ," the matter should be remanded for further proceedings), cert. denied, 531 U.S. 1038 (2000).

**ORDER**

IT IS ORDERED that the Commissioner's decision is reversed, and the action is remanded to the Social Security Administration for further proceedings consistent with this Opinion and Order, pursuant to sentence four of 42 U.S.C. § 405(g), and Judgment shall be entered accordingly.

DATE:  June 15, 2007                    /s/ Rosalyn M. Chapman
                                        ROSALYN M. CHAPMAN
                                        UNITED STATES MAGISTRATE JUDGE

R&R-MDO\06-0537.mdo
6/15/07